[Crim. No. 21302. First Dist., Div. One. May 21, 1981.]

THE PEOPLE, Plaintiff and Appellant, v.
STEVEN MICHAEL FIELDS et al., Defendants and Respondents.

**COUNSEL**

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson, Jr., and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Appellant.

David Edwin Power, under appointment by the Court of Appeal, Paul Ligda, Public Defender, Denis Honeychurch and Honeychurch, Finkas & Villarreal for Defendants and Respondents.

**OPINION**

**GRODIN, J.**—This is an appeal by the People from an order of the superior court dismissing charges against respondents on the basis that

the only evidence supporting the charges had been suppressed at a special hearing. (Pen. Code, § 1238, subd. (a)(7).) ▪ The question presented, apparently one of first impression in this state, is whether the fruits of a probationary search must be suppressed because *subsequent* to the search the conviction underlying the terms of probation is reversed on appeal.

The relevant facts are not in dispute. On August 31, 1977, respondent Fields pled guilty in Napa County Superior Court to a violation of Health and Safety Code section 11357, subdivision (a) (possession of marijuana), and was granted three years' probation upon the condition (among others) that he "submit his person and property to search and seizure by the Probation Officer or any Law Enforcement Officer at any time of the day or night, with or without a Warrant." On March 30, 1979, Sergeant John Eisler of the Solano County Sheriff's Department was informed by an anonymous telephone caller that Fields had 50 pounds of marijuana in his home on Cordelia Road in Suisun. After contacting the Napa County Probation Department to verify the search and seizure condition of Fields' probation, and obtaining authorization from his probation officer to conduct a search of Fields' home, Sergeant Eisler went with other sheriff's officers to his residence. He introduced himself to Fields, stated that he was there to conduct a search pursuant to Fields' conditions of probation, and entered the house. There he found the other respondents, and evidence which led to the filing of charges against all of them for narcotics violations.[1]

About four months later, on August 15, 1979, Fields' 1977 conviction for possession of marijuana was reversed on the ground that the evidence in *that* case had been illegally obtained and should have been suppressed. (*People v. Fields* (1979) 95 Cal.App.3d 972 [157 Cal.Rptr. 578].) Thereafter, respondents moved to suppress the evidence in *this* case pursuant to Penal Code section 1538.5. The trial court granted the motion and subsequently dismissed the charges pursuant to section 1385. This appeal followed.

Both parties recognize, as did the trial court, that there exists no direct authority on the question presented. Respondents place principal reliance upon *People* v. *Keller* (1978) 76 Cal.App.3d 827 [143

---

[1]Respondents Fields and Cheryl Ann Daiprai were charged with possession of marijuana for sale (Health & Saf. Code, § 11359); respondent Richard Eugene Banks, with possession of cocaine (Health & Saf. Code, § 11350).

Cal.Rptr. 184], in which the court held that a waiver of Fourth Amendment rights could not validly be imposed as a condition of probation in a conviction for theft of a 49-cent ballpoint pen. In that case the defendant pled guilty to a second offense after an unsuccessful motion to suppress evidence obtained through a search based upon the waiver; and, since the court reversed the conviction which followed upon the guilty plea, it necessarily held by implication (though without discussion) that the invalidity of the waiver vitiated the search.

Here, no claim is made that the search condition attached to Fields' probation terms was unreasonable or independently invalid; rather, it is argued that the invalidity of the conviction renders Fields' probationary *status* retroactively invalid, and with it the search condition as well. We do not agree. If Fields' conviction had been overturned *prior* to the search, Fields would no longer be on probationary status, and the search condition could not be relied upon to support a warrantless search. (*Freytes* v. *Superior Court* (1976) 60 Cal.App.3d 958 [132 Cal.Rptr. 26]; cf. *People* v. *Spratt* (1980) 104 Cal.App.3d 562, 567-568 [164 Cal.Rptr. 78].) But the Legislature has made clear that an appeal from a judgment of conviction "does not stay the execution of the judgment or order granting probation in any...case unless the trial or appellate court shall so order" (Pen. Code, § 1243), and of course there was no such order here. Thus, Fields' probationary status continued in effect.

Perhaps the closest authority is *People* v. *Dubose* (1971) 17 Cal. App.3d 43 [94.Cal.Rptr. 376], in which a police officer, without a warrant, entered the home of a parolee for the purpose of arresting him for a violation of parole, and while there observed evidence of contraband which led to new criminal charges against him. Subsequently, the conviction underlying defendant's parole status was ruled invalid. The trial court suppressed evidence on that ground, but this court in an opinion by Justice Molinari held that was error. In so doing we referred to "[t]he basic proposition that an individual is subject to all the disabilities of a judgment, commitment or sentence which, though voidable, has not been judicially voided ...." (17 Cal.App.3d at p. 49.)

Somewhat analogous and supportive of that proposition are cases which hold that a defendant charged with assault by a life prisoner (Pen. Code, § 4500) may be convicted of that offense despite the invalidity of the prior conviction upon which the life sentence was based (*Graham* v. *Superior Court* (1979) 98 Cal.App.3d 880, 890 [160 Cal.

Rptr. 10]); accord, *People* v. *Superior Court* (*Gaulden*) (1977) 66 Cal. App.3d 773, 777-779 [136 Cal.Rptr. 229]); and that in a prosecution for possession of a concealable firearm by a felon (Pen. Code, § 12021) the invalidity of the underlying prior felony conviction is no defense (cf. *Lewis* v. *United States* (1980) 445 U.S. 55 [63 L.Ed.2d 198, 100 S.Ct. 915] [federal statute]; see also *People* v. *Scherbing* (1949) 93 Cal.App. 2d 736, 742-744 [209 P.2d 796], disapproved on other grounds, *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375] [in a prosecution for possession of a knife in prison (Pen. Code, § 4502) the constitutional invalidity of the statute under which the inmate was confined is no defense]; *In re Estrada* (1965) 63 Cal.2d 740, 748-750 [48 Cal.Rptr. 172, 408 P.2d 948] [distinguishing between confinement under an unconstitutional statute and confinement "without any authority at all"]).

Determining the admissibility of evidence obtained in a probation search by the legal status of the probationer at the time of the search is consistent with the functions of the exclusionary rule. Insofar as that rule exists to deter intrusion by the police upon constitutionally protected rights of privacy (*People* v. *Blair* (1979) 25 Cal.3d 640, 655 [159 Cal.Rptr. 818, 602 P.2d 738]), it obviously would serve no useful purpose to apply it in a situation where the police are acting on the basis of a then valid and subsisting condition of probation which permits them to search without a warrant. On the contrary, to apply the exclusionary rule in such a context would mean that whenever the police conduct a probationary search they would be acting at their, and the public's peril. And, in light of these considerations, we cannot accept respondents' contention that application of the exclusionary rule is required in order to maintain the integrity of the judicial process. (*People* v. *Blair, supra,* 25 Cal.3d at p. 656.) Rather, we consider that the integrity of the process is best served, at least under the circumstances present here, by a rule which determines the validity of the search on the basis of the legal situation which exists at the time the search is made.

For these reasons, also, we cannot accept respondents' and the trial court's theory that Fields' "consent" to warrantless searches was vitiated by the subsequent reversal of his conviction. Insofar as probation searches rest on a theory of consent (*People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630], disapproved on other grounds, *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545]; cf. *People* v. *Keller, supra,* 76 Cal.App.3d 827, 832, fn. 2), the defendant's consent must be deemed to be for the dura-

tion of his status as a probationer, and operative until that status is terminated by its terms or through judicial action.

The trial court in this case erred in its determination that the probationary search was unlawful. Respondent Banks' motion to suppress, however, was based in part on other grounds. Specifically, Banks challenged a search of his person conducted after the officers had entered Fields' residence; and it appears from the record that the trial court expressly declined to rule on the validity of that search. Because the testimony was conflicting, the issue does not lend itself to resolution as a matter of law. We therefore remand to the trial court for disposition of respondent Banks' alternate grounds for suppression. (*People* v. *Brooks* (1980) 26 Cal.3d 471, 483 [162 Cal.Rptr. 177, 605 P.2d 1306].)

The order dismissing the action is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Elkington, Acting P. J., and Newsom, J., concurred.