[No. A048455. First Dist., Div. Five. Mar. 29, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RALPH FOSTER IVEY, Defendant and Appellant.

**COUNSEL**

Alexander G. van Broek, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and

George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**LOW, P. J.**—We hold that police officers cannot rely on the "good faith exception" to validate an arrest if the arrest warrant is negligently delayed in being recalled and the warrant is erroneously shown as still outstanding.

Ralph Foster Ivey was convicted in a court trial of possession of cocaine (Health & Saf. Code, § 11350) and was found to have served a prior prison term (Pen. Code, § 667.5). His motion to suppress evidence of the contraband was denied (Pen. Code, § 1538.5). He appeals, contending his arrest, based on a recalled arrest warrant, was unlawful and the evidence seized as a consequence should have been suppressed. We agree and reverse.

At about 10:30 a.m. on February 4, 1989, Fort Bragg Police Officers Lathrop and Silva saw defendant in a passing car. Believing defendant was subject to an outstanding arrest warrant, Lathrop ran a warrant check. The police dispatcher informed him that the arrest warrant for misdemeanor Vehicle Code offenses was still in effect. The officers arrested defendant and transported him to the police station.

When they arrived at the police station, Silva escorted defendant to the booking area while Officer Lathrop went to another office to get an abstract of the arrest warrant. Officer Silva had defendant empty his pockets, which were found to contain cocaine powder and two empty ballpoint pen barrels with cocaine residue on them.

Lathrop returned with the arrest warrant abstract showing the warrant was outstanding. Defendant told the officers he had already posted the $1,000 bail on that warrant one month earlier, and showed the officers the bail receipt he carried in his wallet. Lathrop left the booking area and contacted the Ukiah Sheriffs Department, which once again confirmed that the warrant was still active. But this was an error. The Fort Bragg Police Department had received the bail posted by defendant and transmitted it to the Ukiah Justice Court, but the justice court failed to issue the recall notice. Two days later, on February 6, the justice court ordered the arrest warrant to be withdrawn. Both Fort Bragg and Ukiah are in Mendocino County. At the suppression hearing, defendant introduced (1) the bail receipt from the Ukiah Justice Court indicating that it received the bail from the Fort Bragg Police Department, and (2) the warrant withdrawal form

issued on February 6, 1989. In denying the suppression motion, the trial court found that since the warrant was outstanding at the time of the arrest, the detention and arrest were valid and the officers acted in good faith in executing the warrant.

The People concede that defendant's Fourth Amendment rights were violated by the arrest on the recalled warrant. ▮▮▮ But they argue that exclusion of the evidence is not a proper remedy since it was the fault of the Ukiah Justice Court, not the police department, that the warrant was not recalled, and the officers acted in good faith. They rely on *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], which holds that the exclusionary rule does not apply to evidence obtained by officers who reasonably rely on a facially valid search warrant, issued by a neutral magistrate, which is ultimately found to lack probable cause. (*Id.*, at p. 926 [82 L.Ed.2d at pp. 700-701].) There, an officer submitted an affidavit based on an informant's information that defendants were dealing drugs, and which also included a detailed description of police officers' extensive investigation seeming to corroborate this information. (*Id.*, at pp. 901-902 [82 L.Ed.2d at p. 684].) The search warrant issued by the magistrate was later found to be lacking in probable cause. Nevertheless, the court refused to suppress the evidence, concluding that the remedial aspects of the exclusionary rule—deterrence of official police misconduct—would not be served. (*Id.*, at pp. 916-922 [82 L.Ed.2d at pp. 694-698].) The arresting officer acted in good faith and it was objectively reasonable for him to rely on the magistrate's probable cause determination. The court reasoned the exclusionary rule was designed to deter police misconduct rather than punish the errors of judges and magistrates, and, ordinarily, an officer acting in good faith cannot be expected to question the legal conclusions of the issuing magistrate. (*Id.*, at pp. 918-921, 923 [82 L.Ed.2d at pp. 695-697].) Because the officer had acted reasonably in obtaining the search warrant, the court concluded there was no police illegality to deter and refused to suppress the evidence obtained in the search. (*Id.*, at pp. 925-926 [82 L.Ed.2d at p. 700].)

*United States* v. *Leon* is distinguishable. Here, the error was the official transmission of misinformation by the police. The arrest was based on false information, i.e., that the bench warrant was properly outstanding. Unlike the facts in *Leon*, the Fort Bragg Police Department and the Ukiah Justice Court should have recalled the warrant over one month earlier. The Fort Bragg police did not have the correct information in their computer data banks. Thus, the arrest was the direct result of the collective negligence of the police department, rather than an erroneous legal determination by a neutral magistrate. ▮▮▮ Even the *Leon* court would apply the exclusionary rule where the police unreasonably believed a valid warrant had issued;

e.g., an officer cannot claim good faith reliance on a warrant affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*Leon, supra*, 468 U.S. at p. 923 [82 L.Ed.2d at p. 699]; accord, *People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1218-1219 [252 Cal.Rptr. 739].)

■ Applying the exclusionary rule in this instance would further the remedial purpose behind the rule, by holding law enforcement agencies accountable for their unreasonable mistakes and thus encourage them to adopt more accurate and efficient methods for recordkeeping. The timely dissemination of accurate information is of paramount concern when dealing with such vitally important information as the proper status of an arrest warrant. Certainly, the available technology readily permits rapid communication that bail has been posted and the arrest warrant should be recalled.

An identical result was reached in *People* v. *Ramirez* (1983) 34 Cal.3d 541 [194 Cal.Rptr. 454, 668 P.2d 761], a pre-*Leon* case, which held that an arrest made pursuant to a recalled warrant was invalid. Officer Brown detained defendant and radioed for a warrant check. He was informed there was an outstanding bench warrant for defendant's arrest for possession of PCP. The officer believed the warrant was valid, arrested defendant and transported him to the station. A booking search discovered a tinfoil bindle of PCP. A subsequent inquiry revealed that the arrest warrant had been recalled some six months earlier. Officer Brown effected the arrest in good faith reliance on the information obtained through " 'official channels.' " (*Id.*, at p. 552.)

The Supreme Court rejected the People's argument that an officer's good faith reliance on information communicated through "official channels" should validate the arrest and search. The court stated: "The fact that the officer acted in good faith reliance on the communication does not magically resuscitate a recalled warrant and, phoenix-like, recreate a valid outstanding document." (*Ramirez, supra*, 34 Cal.3d at p. 545.) Recognizing that an officer in the field may rely on information communicated to him by fellow officers to establish probable cause to arrest, the court concluded that "we must also charge him with knowledge of information exonerating a suspect formerly wanted in connection with a crime. The 'fellow officer' or 'collective knowledge' rule cannot function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information. [Citation.]" (*Id.*, at p. 547.) The court held that since no warrant existed at the time of defendant's arrest, and Officer Brown did not have independent probable cause to detain him, the arrest could not be sustained. (*Ibid.*)

The *Ramirez* court relied on *Whiteley v. Warden* (1971) 401 U.S. 560 [28 L.Ed.2d 306, 91 S.Ct. 1031], where the arresting officer relied on an official police communication that an arrest warrant had been issued for defendant. The warrant was later found to be defective because it was based on a complaint that failed to demonstrate probable cause for arrest, but instead "consist[ed] of nothing more than the complainant's conclusion that the individuals named therein perpetrated the offense described in the complaint." (*Whiteley, supra,* at p. 565 [28 L.Ed.2d at p. 311].) The *Whiteley* court refused to insulate an illegal arrest based on a "bare bones" affidavit simply because the arresting officer decided to rely in good faith on fellow officers to make the arrest. (*Whiteley, supra,* at p. 568 [28 L.Ed.2d at p. 313]; *Ramirez, supra,* 34 Cal.3d at pp. 544-545.)

Although *Ramirez* was filed before *United States v. Leon,* its reasoning is still valid. *Whiteley* was cited with approval in *Leon* (468 U.S. at p. 923, fn. 24 [82 L.Ed.2d at p. 698]). We conclude that the "good faith" exception to the exclusionary rule does not operate when the arresting officer relies on information which the police department knows or should know is not true. (Compare *Michigan v. DeFillippo* (1979) 443 U.S. 31, 37-38 [61 L.Ed.2d 343, 350, 99 S.Ct. 2627] [good faith arrest for vagrancy upheld, although the statute was later declared unconstitutional].)

The People argue that it would serve no purpose to penalize the police department for an error by the Ukiah Justice Court in failing to withdraw the arrest warrant once defendant had posted bail. It appears the Fort Bragg Police Department correctly transmitted the information to the Ukiah Justice Court that the bench warrant should have been recalled. While the justice court was the agency which had the final duty to clear the records, that duty was shared with the Fort Bragg Police Department. It was the police computer system on which the field officer relied. Ultimately, it is the burden of the law enforcement agency to maintain timely and accurate records. The police department should not be permitted to delegate to the justice court, or any other agency, a duty which affects the basic liberty of any citizen, to be free from the fear of being unjustly detained or arrested.

Our conclusion is supported by *People v. Conway* (1990) 222 Cal.App.3d 806 [271 Cal.Rptr. 832]. There, Officer McIntosh detained defendant because he recalled seeing defendant's name on a list of persons with outstanding arrest warrants. The list containing defendant's name had been issued a little more than one month prior to the stop. Officer McIntosh called the dispatcher to confirm the warrant. While the officer was awaiting the results of the warrant check, he saw a buck knife in a sheath on defendant's belt. Fearing for his safety, the officer frisked defendant. At this time, defendant

dropped a small package containing cocaine. Two or three minutes later, McIntosh received a reply that the warrant had been served two weeks earlier. Defendant moved to suppress the evidence, claiming the detention was unlawful.

The trial court denied the motion, and the Court of Appeal affirmed holding the officer acted properly in detaining defendant only so long as necessary to obtain a warrant check. The court rejected defendant's reliance on *Ramirez*, reasoning that this was not a search based on the official transmission of misinformation. The officer did not *arrest* or *search* defendant on the basis of the warrant, but merely *detained* him in order to determine if a warrant was outstanding. (*Conway, supra*, 222 Cal.App.3d at p. 810.) In relevant part, the court believed that "[h]ad the officer *arrested* [defendant based] on the basis of *misinformation* regarding the status of the warrant, the arrest would be unlawful regardless of the officer's good faith." (*Id.*, at p. 813, fn. 1, italics in original.) It concluded that the *detention* was justified because the officer had reasonable cause to believe that there was an outstanding warrant for defendant's arrest. (*Id.*, at p. 812.)

Similarly, in *People* v. *Dickens* (1984) 163 Cal.App.3d 377 [208 Cal.Rptr. 751], the court applied the exclusionary rule to a good faith arrest made pursuant to an otherwise facially valid arrest warrant. The warrant issued for the same charges on which defendant had been arrested, and booked and released pending his arraignment. The police knew or should have known this essential information. The court refused to excuse the arrest because it was based on " 'inadequate or negligent record-keeping.' " (*Id.*, at p. 381.) The court stated, in dicta, that even under *Leon* the "good faith" exception would not apply here. (*Id.*, at pp. 381-382, fn. 4; accord, *People* v. *Howard* (1984) 162 Cal.App.3d 8, 20-21 [208 Cal.Rptr. 353] [there is no good faith exception in a search for stolen goods where it is based on information from a probation officer who negligently or recklessly omitted telling the arresting officer that defendant's probation search condition was restricted to a search for narcotics].)

If, as shown here, it is unreasonable for the transmitting officer to believe the arrest warrant was valid, the subsequent illegal arrest cannot be insulated from the exclusionary rule simply because the arrest was made by an unsuspecting officer. Otherwise, the policy of deterring police misconduct and encouraging accurate recordkeeping would be defeated.

The trial court erred in denying defendant's suppression motion. The judgment is reversed.

King, J., and Haning, J., concurred.