[No. G031747. Fourth Dist., Div. Three. Oct. 26, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
CHRISTOPHER JOSEPH MILLER, Defendant and Appellant.

## COUNSEL

Patrick E. DuNah, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr., and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SILLS, P. J.**—Christopher Joseph Miller appeals from the judgment sending him to prison for a total of two years eight months following a negotiated guilty plea entered in two separate cases for a series of offenses: Possession of child pornography with intent to distribute (Pen. Code, § 311.1, subd. (a)),[1] grand theft (§ 487, subd. (a)), identity theft (§ 530.5, subd. (a)), commercial burglary (§§ 459–460, subd. (b)), and possession of child pornography with a prior conviction for a similar offense (§ 311.1, subd. (b)). He also admitted the special allegation that he was on bail in 2002 for the first offense—which occurred in 1999—when he committed the four later offenses. Miller challenged the search resulting in the evidence against him for the 1999 count of child pornography, but his motion to suppress was denied. He now contends the trial court erred when it denied that motion. As an added reason to reverse that denial, he argues that his subsequent consent to the search was involuntary. Thus, he claims the evidence supporting the 1999 count of child-pornography duplication must be suppressed, and the conviction reversed. We affirm.

---

[1] The original charges in the 1999 case included two counts of duplicating obscene material with intent to distribute, two counts of misdemeanor possession of child pornography and one count of child molestation. After Miller's motion to suppress was denied, he pleaded guilty to the two counts of duplicating pornography with the intent to distribute and the two counts of misdemeanor possession of child pornography. The child molestation count was dismissed. Pending sentencing on the first case, the second case was filed against Miller, involving the four charges of theft and the one charge of child pornography. The negotiated plea of guilty permitted Miller to admit all the counts in the second case and receive a total term of two years eight months: Two years for the child pornography with a prior conviction as the base term, two-year terms for the other felony charges in the second case to be served concurrently with the base term, and an additional eight months for one count of duplicating pornography with the intent to distribute from the first case. The enhancement in the second case was stricken.

All further section references are to the Penal Code, unless otherwise stated.

## I

## FACTS

In August 1995, Miller entered a guilty plea to misdemeanor charges of possessing or duplicating child pornography under section 311.11, subdivision (a), and was placed on probation. One condition to that grant of probation was that Miller waive his search and seizure rights, and that he not be in the presence of minors unless accompanied by someone older than 21. However, no one ordered him to register as a sex offender as a condition to this probation. At the time, section 290 *required* lifetime registration for anyone convicted under section 311.11, although this statutory requirement was of recent creation. (See §§ 290, subd. (a)(2)(A), 311.11, subd. (a) [as of Jan. 1995]; fn. 3, *post.*)

Although it was not imposed as a term to the 1995 grant of probation, Miller's probation officer directed him to register as a sex offender in 1997. Miller *complied with this order* without complaint or objection, although he entered written complaints as to other aspects of his probationary conditions at this time and directed his attorney to obtain a modification of other terms of that probation.

In summer 1999, Wade Walsvick, an investigator with the Orange County Sheriff's Department assigned to the Sex Offender Notification and Registration Unit, contacted Miller at his home. Walsvick previously determined that Miller was on probation and had a search and seizure waiver as a condition to that probation.

Walsvick and his partner, Jim England, asked if they could talk with Miller, who then invited them into his home. Miller told the investigators that he was a "Mr. Mom," responsible for taking care of the children,[2] and that he was on the computer when they knocked on his door. Walsvick then asked for his permission to search the computer, which Miller gave. Within five minutes, England found a collection of child pornography, more of which was found on floppy disks near the computer.

Within a month of the search, Miller brought a motion to vacate the judgment of the 1995 criminal case, challenging that registration requirement. Arguing that he never would have entered a guilty plea at all had he known the registration requirement was going to be imposed, Miller requested that

---

[2] Miller was married and was the father of twin boys, born in February 1999. He met his wife after forming a friendship with her teenage son, Brian. Subsequent to this marriage's dissolution, evidence was found that Miller had apparently obsessed about Brian before he ever met Brian's mother, who was 15 years older than Miller.

the judgment be vacated in its entirety because the statute mandated registration for the offense. He testified that he had "bargained" for a registrationless sentence, and the state was unable to perform on that promise due to the statute. When first raised, this motion was denied. However, the motion to vacate was renewed in March 2000 on these same grounds and was granted, one full year after the search was conducted.

Miller then brought his motion to suppress the evidence seized by Walsvick and England. Arguing that the legality of the probation condition waiving his search and seizure rights was dependent on the initial plea—which had been recently vacated—Miller contended all the seized evidence had to be suppressed. The motion was denied. Miller petitioned us from that denial, but we summarily denied his petition for writ.

While this pornography case was pending, Miller's former wife, Robbin, reported to the police that she suspected her former husband had surreptitiously used her personal financial information to open four accounts in spring 2002. Their divorce was final in December 2001, but Miller had retained all of her personal financial information, which he had used to open the accounts, misrepresenting that her assets were his own. Investigating these allegations, the officers found Miller not only fraudulently obtained those accounts but also then used them to purchase a computer, which he subsequently attempted to sell to a pawnbroker in August 2002. Pornographic images of children were again found in his possession in connection with this computer.

II

DISCUSSION

A.   The Suppression Motion

As he did at the trial court level, Miller contends that all the evidence seized by Walsvick and England had to be suppressed because the 1995 guilty plea was vacated, albeit only after the search was conducted. The trial court denied his suppression motion, finding there was a "valid grant of probation . . . effective on the day of the search in question." Rejecting the defense characterization that "this was some kind of arrangement between the D.A. and the defendant[,]" the court found that "the court is ultimately responsible for imposing the sentence in the case and everybody in the room could have been completely flat wrong and it's . . . still the court's job to give the right sentence and that would include the 290 [sic] registration." The court's focus was that "the exclusionary rule's application has been restricted to those instances where its remedial objectives are thought most efficaciously

served. [¶] If this court were to impose exclusion in this case, it would essentially be saying that the defendant was allowed for a period of [four] years to essentially have a get-out-of-jail card in his pocket because all he had to do was just wait until he faced a new crime violation or some search condition of probation, at which time he could pull that card out and trump the search by asserting an illegal proceeding [back] in 1995."

■ In our review of the denial of a suppression motion, we review and accept as true those facts found by the trial court under the substantial evidence standard. We then must determine de novo whether " 'the search was unreasonable within the meaning of the Constitution.' " (*People v. Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr.3d 867, 629 P.2d 961].) As exclusion is only permitted when mandated by the federal Constitution, we apply the federal constitutional standards in our determination of reasonableness. (See *People v. Robles* (2000) 23 Cal.4th 789, 794 [97 Cal.Rptr.2d 914, 3 P.3d 311].)

■ "In California, a person may validly consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term. [Citation.] Warrantless searches are justified in the probation context because they aid in deterring further offenses by the probationer . . . . By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers. [Citation.]" (*People v. Robles, supra,* 23 Cal.4th at p. 795.)

Miller's waiver of his Fourth Amendment rights in 1995 clearly met the constitutional definition of advance consent. He now contends, however, that his waiver was not "voluntary": It was *conditioned* on the "promise" he would not have to register under section 290. Because that promise was *unenforceable* due to the mandatory nature of the registration statute,[3] Miller

---

[3] The parties below hotly contested whether the failure to include the registration requirement was the fault of the prosecutor, the judge or the defendant. The judge hearing the original motion to vacate felt Miller's failure to assert any objection until after the search reflected that the fault lay there. However, that same judge during the renewed motion to vacate held the opinion that *either* the prosecutor in the 1995 plea negotiations *or* the trial court taking the plea erred; and that judge made several comments, indicating his inclination was to blame the prosecution. The judge hearing the suppression motion, however, was of the opinion that it was, ultimately, the trial court's responsibility when it took the plea, an error exacerbated by the defendant's deleterious tactics. It should be noted that the misdemeanor offense to which Miller pleaded guilty was only added to those listed in section 290, subdivision (a)—thus mandating registration—a few months before Miller's plea was entered. (See § 290, as

argues that his agreement to waive his Fourth Amendment protection was likewise unenforceable. Alternatively, he argues that the prosecutor specifically misled him into believing registration would not be imposed, and he detrimentally relied on that state agent's misinformation. A choice made on erroneous information, he claims, is "no choice at all." Finally, Miller invokes the trial court's order vacating the 1995 judgment: "Such an order 'nullifies any proceedings taken under the guilty plea, and restores the defendant to the position of an accused who first presents a plea of not guilty.' [Citation.]" (*People v. Aragon* (1992) 11 Cal.App.4th 749, 756 [14 Cal.Rptr.2d 561].) Thus, the waiver was null and void, he contends, rendering the search pursuant to it illegal.

## B. Good Faith Reliance

■ Evidence seized by law enforcement officers is not to be suppressed if the officers relied on some objectively reasonable justification when it was seized. (See generally *United States v. Leon* (1984) 468 U.S. 897, 910 [82 L.Ed.2d 677, 104 S.Ct. 3405].) Thus, when a search warrant authorized a search, but subsequent to that search, the warrant was found technically defective or unsupported by probable cause, the fruits of that search were nonetheless properly admitted. (*Id.* at pp. 919–920.) Similarly, when officers searched a car in reliance on an administrative statute later found to be unconstitutional, the evidence seized in that search was not suppressed. (See *Illinois v. Krull* (1987) 480 U.S. 340, 343 [94 L.Ed.2d 364, 107 S.Ct. 1160].) Likewise, a bench warrant, later found technically invalid, still provided the basis for upholding the arrest of the person named in that warrant. (See *People v. Palmer* (1989) 207 Cal.App.3d 663, 670–676 [255 Cal.Rptr. 55].) Even though the warrant on which certain officers relied had been quashed, but the officers never learned of its invalidity due to a court's clerical error, the evidence seized pursuant to it was properly admitted against the arrestee. (See *Arizona v. Evans* (1995) 514 U.S. 1, 14–17 [131 L.Ed.2d 34, 115 S.Ct. 1185]; see also *People v. Downing* (1995) 33 Cal.App.4th 1641, 1656–1657 [40 Cal.Rptr.2d 176].) And just as a court employee's negligence does not undermine an officer's reliance on a facially valid warrant, neither does an error by a clerk of the Department of Motor Vehicles (DMV) in car registration records, maintained by DMV but used by police officers. (See *People v. Hamilton* (2002) 102 Cal.App.4th 1311, 1313 [126 Cal.Rptr.2d 273].)

---

amended effective January 1995 (Stats. 1994, ch. 863, § 1, p. 4273; Stats. 1994, ch. 864, § 1, p. 4311; Stats. 1994, ch. 865, § 1, p. 4316; Stats. 1994, ch. 867, § 2.7, p. 4389.)

The only exception to this rule can be found in *People v. Willis* (2002) 28 Cal.4th 22 [120 Cal.Rptr.2d 105, 46 P.3d 898] and *People v. Ferguson* (2003) 109 Cal.App.4th 367 [134 Cal.Rptr.2d 705].[4] In *Willis*, a parole record showed Willis was on parole, although he was actually discharged from that status. Police officers and a parole officer relied on the record, however, when they searched Willis's motel room. Willis, on the other hand, proved that his parole was discharged with documentation. It was unclear who actually erred in compiling the information regarding Willis's parole status, but the error must have come from *either* a parole agent or a data entry clerk at the Department of Corrections (CDC). The Supreme Court held that, whether it was an agent or a CDC clerk, such persons are "adjuncts to the law enforcement team." (*People v. Willis, supra,* 28 Cal.4th at pp. 39–45.) As such, exclusion of evidence seized as a result of their error could have a deterrent effect on future CDC misconduct. Because the goal of the exclusionary rule is to teach law enforcement, and motivate its officers not to violate Fourth Amendment rights, suppression was found to be an appropriate response to the situation. (*Id.* at p. 42.)

Likewise, in *Ferguson*, it was either a probation officer or a probation department clerk who failed to enter into the police database that Ferguson was no longer on probation and subject to a search condition. Noting probation officers—and their clerks—are members of the law enforcement team, errors by them resulting in Fourth Amendment violations must fall under the curative umbrella of the exclusionary rule. (*People v. Ferguson, supra,* 109 Cal.App.4th at pp. 375–377.)

The question remains whether a facially valid, court-imposed condition of probation justifies a search if the guilty plea resulting in that probation grant is vacated subsequent to the search. Miller contends that the "error" necessitating the plea withdrawal was that of the prosecutor in the original 1995 plea

---

[4] Miller also relies on *People v. Ivey* (1991) 228 Cal.App.3d 1423 [279 Cal.Rptr. 554], which held that the police were responsible for "collective negligence of the police department[s]" in maintaining and updating their recordkeeping. In *Ivey,* a defendant was arrested on an arrest warrant, bail for which had been posted by Ivey a month before. However, neither the justice court that had received the bail nor the police department which initially requested the warrant had entered this information, resulting in a neighboring police department executing on the warrant that appeared valid.

However, two factors lead us to conclude that *Ivey* is not applicable here: (1) the *Ivey* warrant was judicially recalled *before* the arrest, whereas Miller's registration condition was voided *after* the search; and (2) Ivey's arrest was due to slipshod recordkeeping by either the justice court or the police departments whereas Miller's status as a probationer was valid at the time of the search: The police could not have known that his probation status was going to be nullified at some future date.

negotiations. A prosecutor is a member of the "law enforcement team," and thus, the exclusionary rule should apply to deter future prosecutorial over-reaching via misinformation, drawing an analogy to the situations in *Willis* and *Ferguson*.

The Attorney General, on the other hand, emphasizes that the trial court at the suppression hearing *found* that if anyone was at fault, it was the judge who took the plea and imposed an unauthorized sentence. As "[i]n *Leon* and *Evans*, the court reasoned that exclusion for errors by judges, magistrates, and court clerks cannot be expected to alter the behavior of police officers, who are in no position to question court directives. [Citations.] . . . 'Penalizing [an] officer for [a judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.' " (*People v. Willis, supra,* 28 Cal.4th at p. 42.) As there is at least "solid, credible evidence" in support of this factual finding by the lower court, we are bound to accept it. (See *People v. Davis* (1995) 10 Cal.4th 463, 509 [41 Cal.Rptr.2d 826, 896 P.2d 119] [substantial evidence is that which " 'is reasonable, credible and of solid value.' "].)[5]

■ We think the Attorney General has the better argument. As was noted in *People v. Robles, supra,* 23 Cal.4th at page 798, when a probationer is aware of a search condition, he must know that a police officer can, and will, search him and his property. His expectation of privacy is eliminated by that knowledge, *whether or not* he had silently "conditioned" that waiver on another term of the sentence. Police officers reasonably rely on the court records stating that a probationer has waived his or her search and seizure rights. When Walsvick and England entered Miller's home, he was on probation and subject to a valid Fourth Amendment waiver. Officers cannot be expected to go behind every grant of probation to see if there was *possibly* an unauthorized aspect to the judgment before they act on that waiver.

"We have frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment. . . . But even assuming that the rule effectively deters *some* police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and *should not be applied*, to deter objectively reasonable law enforcement

---

[5] Miller disputes that this finding is binding on us, emphasizing that the judge who granted the motion to vacate voiced an arguably contrary opinion. However, we are reviewing the denial of the motion to suppress, and the findings of *that* court are in issue, not findings made by other judges pursuant to other motions.

activity. [¶] . . . 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. . . . Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.' " (*United States v. Leon, supra,* 468 U.S. at pp. 918–919, italics added.)

Miller responds that, irrespective of the officers' good faith reliance on the probation waiver, that search-and-seizure condition was nullified nunc pro tunc to the date of the original plea once the trial court granted the motion to vacate. (See *People v. Aragon* (1992) 11 Cal.App.4th 749, 756–757 [14 Cal.Rptr.2d 561] [an order vacating judgment " 'nullifies any proceedings taken under the guilty plea, and restores the defendant to the position of an accused who first presents a plea of not guilty.' [Citation.]") But, as occurred in *Aragon,* "these principles produce consequences which may appear anomalous." (*Id.* at p. 757.)

In *Aragon,* the defendant had completed all the terms of his probation, including a year spent in jail. At the close of his probation term, he brought a motion to vacate the earlier guilty plea, presumably because he faced deportation for the phencyclidine charge. Instead, he desired to plead guilty to the formerly dismissed charge of cocaine possession, thereby eliminating the deportation risk. As the *Aragon* court noted, it is rare that a defendant, after serving his entire sentence, wants to withdraw his plea and, instead, plead guilty to a more severe offense.

Rare, but definitely not unique. Aragon and Miller appear to be kindred spirits. Miller had served four of the five years of his probation, completed the weekends of community service in lieu of custody, and attended counseling sessions under his grant of probation. His motion to vacate, however, did *not* revive more severe offenses, nor place him at risk of greater penalty. He had every reason to bring the motion and zealously pursue it, and no reason to stand by the original terms.

In *People v. Fields* (1981) 119 Cal.App.3d 386 [174 Cal.Rptr. 49], the "question presented . . . [was] whether the fruits of a probationary search must be suppressed because *subsequent* to the search the conviction underlying the terms of probation [was] reversed on appeal." (*Id.* at p. 388, original italics.) The appellate court held that fruits of a probationary search are admissible even though the original conviction for which the probation was

granted was reversed. (*Id.* at p. 390.) The court noted, "the integrity of the process is best served, at least under the circumstances present here, by a rule which determines the validity of the search on the basis of the legal situation which exists at the time the search is made." (*Ibid.*) We agree.

Miller argues, however, that *Fields* is not, and should not be, controlling. First, he emphasizes that Fields knowingly accepted the terms of his probation, thereby giving his advance consent to any search that occurred. Miller, on the other hand, was misled by the prosecutor's promise that he would *not* have to register as a sex offender. Without that promise, he would never have pleaded guilty and accepted the search and seizure waiver as a condition of his probation. Thus, Fields gave his "advance consent to search" while Miller did not.

In his second attack on the application of *Fields*, Miller again invokes the assumption that it was the prosecutor who intentionally, or at the least, negligently misled him into entering his plea. As a member of the law enforcement team, the prosecutor's error vitiates the later officers' good faith reliance on the probation condition.

Miller fails to accept the trial court's explicit finding that it was the *1995 trial court* which erred, if any one entity was to carry that responsibility. As the record provides some credible evidence in support of that finding,[6] we are bound by it. It is irrelevant in our review of the denial of the suppression motion that the judge conducting the hearing on the motion to vacate expressed other opinions or concerns.

We find *Fields* most persuasive, particularly in light of the later *Leon* opinion. There was nothing that the officers could have reasonably done in advance of their search that would have put them on notice that Miller's search and seizure waiver was anything but valid. As such, their good faith reliance on that probation condition renders the fruits of their search admissible against Miller.

---

[6] At the hearing on the suppression motion, the court voiced the factors on which it relied for this conclusion: (1) The prosecutor *aided* the court by filling out some forms, but it was the trial court that retained the power to approve and accept the plea; and (2) the alleged illegality may have been "acquiesced in by all the lawyers in the room," but it was the judge who failed to impose the mandatory registration requirement, and no one else had the power to do so.

As we hold the lower court's denial of the suppression motion was correct, we need not address Miller's alternative argument. The judgment is affirmed.

Rylaarsdam, J., and Moore, J., concurred.

On December 6, 2004, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 16, 2005.