[No. B065317. Second Dist., Div. Seven. July 21, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DONYELL DEVONE SCOTT, Defendant and Appellant.

## COUNSEL

Joseph Balistocky, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Robert David Breton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Convicted by jury of armed robbery (Pen. Code,[1] §§ 211, 12022.5) appellant contends the trial court erred in denying his suppression motion (§ 1538.5) and in admitting his misdemeanor conviction for impeachment purposes. We find no error and affirm the judgment.

### INTRODUCTION

It is customary to now inform the reader of the "Facts and Proceedings Below," that is, to provide a summary of the trial evidence and perhaps a procedural chronology. This summary and chronology enable the reader to know "what happened," to become oriented, and to have a focus for the issues to be discussed.

Because we depart from this custom an explanation is in order.

Here, the dispositive issue has nothing to do with *trial* evidence. What we review is a ruling made *before* trial. To best review this ruling, we put aside the trial record and place ourselves in the position of the judge hearing the pretrial motion. As appellant correctly observes, "the only factual material properly before this court . . . [is the 14-page] record of the section 1538.5 hearing . . . ." (See, e.g., *People* v. *Moreno* (1992) 2 Cal.App.4th 577, 580 [3 Cal.Rptr.2d 66].)

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.

Apart from this "14-page record" of the hearing, which we next consider, the trial court only knew that appellant had been charged with armed robbery (the information so stated) and had filed a section 1538.5 suppression motion which was to be "based upon such evidence as may be introduced at the hearing."

We now consider the record of the suppression hearing.

### SECTION 1538.5 SUPPRESION HEARING

On Tuesday, December 10, 1991, at 11:25 a.m., the trial court called the instant matter, the attorneys identified themselves, and defense counsel stated "we have a 1538.5 to resolve before starting the jury selection."

The prosecutor responded: "It is the People's position that the defendant does not have standing to contest the recovery of any evidence from the apartment of this other person."[2]

Defense counsel replied: "I would offer a stipulation there was no arrest warrant or search warrant in this case."

The court then said "all right" but the prosecutor, rather than accept or reject the offered stipulation, indicated the tendered offer was *premature*. He stated, "again, that does not become an issue until the defendant has established standing."

We interrupt the section 1538.5 colloquy to observe the following: Before Proposition 8 (Cal. Const., art. I, § 28, subd. (d)) abrogated California's vicarious standing rule (*In re Lance W.* (1985) 37 Cal.3d 873, 879 [210 Cal.Rptr. 631, 694 P.2d 744]), *People* v. *Carson* (1970) 4 Cal.App.3d 782, 786 [84 Cal.Rptr. 699] established that "the initial burden of introducing or producing evidence to make out [a] prima facie case of illegality is on the defendant movant." After Proposition 8, with the burden on a defendant to "not merely [prove] that someone's Fourth Amendment rights had been violated . . . but that [his] Fourth Amendment rights had been violated (*People* v. *Thompson* (1990) 221 Cal.App.3d 923, 936 [270 Cal.Rptr. 863]), the "who goes first" question again became an open one.

*People* v. *Johnson* (1984) 162 Cal.App.3d 1003 [209 Cal.Rptr. 78] suggests the defendant movant, who must establish standing, goes first. But

---

[2] Appellant's written motion referred to "an illegal entry into *defendant's* home" but also more vaguely, referred to an apartment 313 where he was [apparently] one of three Black men seated on a couch at the time of arrest. Of course, the *motion* was not "evidence." (Evid. Code, § 140.)

*People* v. *Contreras* (1989) 210 Cal.App.3d 450 [258 Cal.Rptr. 361] holds that the *order* of proof is a matter of trial court discretion. (*Id.*, at p. 456.)

Defense counsel facilitated matters. He agreed to go first, to begin the hearing by establishing "standing." He said, "I am ready to proceed on *it*" and the trial court agreed.

Thus, to recapitulate, before the first witness was called *none* of the following had been established: Whether a crime had been committed; whether an arrest had been made; if made, what information the arresting officer possessed; whether the officer had an arrest warrant; whether a search occurred; if so, where; whether a seizure had occurred; if so, whether the search or seizure was pursuant to a search warrant.

Defense counsel began the hearing by calling an Officer Denton. He testified to the following: he was present when appellant was arrested; he, Officer Denton, had "moved in to the apartment[3] to effect an arrest"; appellant was then "sitting on a couch and he had one leg up on an ottoman adjacent to the couch"; he ordered appellant off the couch and to "get up against the wall"; "at some time after that" he recovered "a gun under the ottoman that his leg [had been] on."

Having elicited this testimony, defense counsel asserted that "standing" had now been established. He stated: "Well, it would be my position that if a person is ordered to move and get out of the way so that the area the person is sitting in can be searched,[4] then that person has a legitimate expectation of privacy . . . ."

A colloquy followed. Defense counsel elaborated, saying "if we were complaining about the search of the apartment itself, bedroom or something like that, we might have problems with standing, but the area that was searched . . . is the immediate area underneath where my client was sitting."

When the trial court expressed uncertainty, stating "I can't rule on that, because I don't know of any authority" defense counsel said he would call further witnesses.

---

[3] No date, time or place was established.

[4] No evidence supported this claim. Officer Denton testified his purpose in entering the apartment *and* in ordering appellant off the couch was to *arrest* appellant. Although extraneous to our present discussion, we note that according to Officer Denton's trial testimony there was no search at all. He testified he orderd appellant and the other two men sitting on the couch to get against the wall and in order to clear a path for them he kicked the ottoman aside. In doing so a gun, which had been under the ottoman, was exposed.

The trial court then asked the prosecutor if he had any questions (cross-examination) of Officer Denton before defense counsel called his next witness.

The prosecutor declined, responding: "I agree with the court at this point."

The court, indicating the matter was not yet settled, told the prosecutor that defense counsel "is going to try to continue to establish . . . standing so we will just have to listen to it. I can't prejudge it."

Defense counsel then called appellant. Appellant testified to the following: He had known a Mr. Lichter for about a month or two when, on May 20, the day before his arrest, Mr. Lichter invited him to sleep over and then, the next day, watch the Lakers' game on television. He did so, sleeping on the couch. The next day, he was sitting on the couch with 2 other people, and had been sitting there for about 15-20 minutes. He had not put anything under the ottoman, did not know anything was under the ottoman, and didn't remember having his leg on the ottoman. He knew nothing about a gun being recovered from under the ottoman.

This was the entirety of the evidence. Based upon this evidence defense counsel reasserted his "standing" argument, that appellant "has a right to have an expectation of privacy in his immediate presence" or "whether or not the officer had a right to get him off the couch and move him so he can search the area underneath Mr. Scott [appellant]. (See fn. 4.)

█ It was this contention upon which the trial court ruled. The trial court denied the motion because appellant, a guest in someone else's apartment, had no legitimate expectation of privacy under an ottoman when he had put nothing under it and disclaimed any interest in what was under it. The trial court's ruling was correct. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 148-149 [58 L.Ed.2d 387, 403-405, 99 S.Ct. 421].)

█ Having detailed the evidence, the issue, and the narrow focus of the section 1538.5 hearing, we now state appellant's contention on appeal: The trial court erred in ruling appellant lacked standing to object to the arresting officer's *illegal entry*.

As is plain from our discussion, no such objection was made in the trial court. Probable cause to arrest appellant, exigent circumstances justifying a warrantless entry, possession of an arrest or search warrant, and other related matters, were never reached. The parties, with court approval,

chose to first address appellant's claimed privacy interest in what might be under a nearby ottoman.[5]

■■■■ Having made no such objection in the trial court appellant may not complain on appeal.[6] (Evid. Code § 353; *People v. Gordon* (1990) 50 Cal.3d 1223, 1255 [270 Cal.Rptr. 451, 792 P.2d 251]; *People v. Clark* (1992) 3 Cal.4th 41, 125-126 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People v. Mickey* (1991) 54 Cal.3d 612, 664 [286 Cal.Rptr. 801, 818 P.2d 84].)

## IMPEACHMENT WITH MISDEMEANOR CONVICTION

■ Appellant contends the trial court erred in ruling his misdemeanor conviction was admissible for impeachment purposes. Appellant is mistaken.

In *People v. Wheeler* (1992) 4 Cal.4th 284 [14 Cal.Rptr.2d 418, 814 P.2d 938] our Supreme Court ruled that evidence a witness had *committed* a misdemeanor involving dishonesty may be admissible for impeachment but the misdemeanor *conviction* was hearsay. Since appellant, in the trial court, failed to object to his misdemeanor conviction on hearsay grounds, he may not now object. (Evid. Code § 353; *People v. Wheeler, supra,* at p. 300.)

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

The majority hold appellant waived his right to contest the legality of the officer's warrantless entry into the apartment by failing to object to the trial court's failure to consider the legality of the arrest when ruling on the motion. There are several flaws with the majority's attempt to dispose of this case on that basis.

First, the issue of appellant's possible waiver of a valid ground on which to grant the suppression motion was not raised in the parties' briefs nor

---

[5]As Professor LaFave insightfully observed, "in determining . . . whether a defendant has standing to seek exclusion of certain evidence on Fourth Amendment grounds, it is critical that the precise police conduct being objected to be properly identified, for this may itself turn out to be determinative on the standing issue." (4 LaFave, Search & Seizure (2d ed. 1987) § 11.3, p. 282.)

[6]We do not doubt, as appellant urges, that *if* an officer illegally enters a residence to arrest a guest of the residence owner, the guest arrestee has standing to object to the illegal entry. (*Minnesota v. Olsen* (1990) 495 U.S. 91 [109 L.Ed.2d 85, 110 S.Ct. 1684].)

relied on by the People in this case. An appellate court may not decide a case based on an issue neither proposed nor briefed by any party without allowing them an opportunity for supplemental briefing. (Gov. Code, § 68081.) Because the parties were not given such opportunity in this case, the majority's disposition of this appeal deprives the parties of their rights of notice and an opportunity to be heard.

Second, the People did not suggest the trial court's error was waived on appeal because they apparently recognized no further objection was required of appellant. In their brief on appeal the People acknowledge the legality of the arrest was put in issue in appellant's motion to suppress. Appellant's notice of motion to suppress evidence under Penal Code section 1538.5 stated he was objecting to all evidence "seized without the use of a search warrant and as a result of an *illegal entry* into the defendant's home." (Italics added.) The notice stated the suppression motion would be based upon "such evidence as may be introduced at the hearing on said motion and upon these points and authorities." The memorandum of points and authorities accompanying the notice of motion concluded with a request the trial court "suppress the chrome revolver, and all evidence flowing from the *illegal arrest*." (Italics added.)

Penal Code section 1538.5 subdivision (m) provides "review on appeal may be obtained by the defendant providing that at some stage of the proceedings prior to conviction he or she has moved for the return of property or the suppression of evidence." Appellant in this case moved to suppress evidence "flowing from the illegal arrest" and therefore preserved for appeal the issue whether the evidence should have been suppressed as fruit of the warrantless arrest. (*Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407].) It is only when the ground for granting a suppression motion is raised for the first time on appeal that a court will deem the issue waived. (Cf. *People* v. *Superior Court* (*Wells*) (1980) 27 Cal.3d 670, 673 [165 Cal.Rptr. 872, 612 P.2d 962]; *Lorenzana* v. *Superior Court* (1973) 9 Cal.3d 626, 640 [108 Cal.Rptr. 585, 511 P.2d 33] with *People* v. *Coleman* (1972) 28 Cal.App.3d 36, 43, fn. 6 [104 Cal.Rptr. 363] [issue not raised in motion but briefly argued at close of evidence preserved issue for review].) The majority cite no authority for the proposition a defendant seeking to suppress evidence must both assert a valid ground in the trial court as well as object when the trial court fails to recognize that ground as meritorious in order to preserve the issue on appeal.

Third, argument at the suppression hearing was focused generally on appellant's reasonable expectations of privacy which were not specifically limited to the alleged illegal search. Defense counsel presented evidence on

two distinct grounds in an effort to establish appellant had standing in this case: appellant had a reasonable expectation of privacy in the area immediately surrounding his person and he had a reasonable expectation of privacy in the apartment by virtue of his status as an overnight guest. On the basis of the United States Supreme Court decision in *Minnesota* v. *Olson* (1990) 495 U.S. 91 [109 L.Ed.2d 85, 110 S.Ct. 1684], appellant's status as an overnight guest was sufficient as a matter of law to establish he had a reasonable expectation of privacy, not only in the area of his immediate person, or in the furniture upon which his body rested, but in "his host's home."[1] (495 U.S. at p. 98 [109 L.Ed.2d at p. 94].) The analysis in *Olson*, establishing a virtual per se rule of standing for overnight guests, is broad enough to include any challenged police activity in a host's home during a period in which a defendant enjoys that status. (See 4 LaFave, Search & Seizure (2d ed. 1987) (1992 supp.) ch. 11, § 11.3, pp. 55-56.) In other words, there is nothing in the Court's analysis which would limit reasonable expectations of privacy for overnight guests to only be free from warrantless arrests while in their host's home, and not unlawful searches.

The majority concede evidence presented at the suppression hearing established appellant was an overnight guest in the apartment in which the allegedly unlawful search and seizure occurred. The majority further acknowledge that under the Supreme Court's decision in *Minnesota* v. *Olson, supra,* 495 U.S. 91, appellant's status as an overnight guest conferred standing on him as a matter of law to challenge his warrantless arrest.

---

[1]In *Minnesota* v. *Olson, supra,* 495 U.S. 91, police suspected Olson of being the driver of the getaway car used in a robbery-murder. Police surrounded the home of two women with whom police believed Olson spent the night to avoid detection. Without seeking permission and with weapons drawn, police entered the home, found Olson hiding in a closet, and arrested him. Shortly thereafter, he made an inculpatory statement, which the trial court refused to suppress. Olson was convicted of murder, armed robbery and assault. The Minnesota Supreme Court reversed, ruling Olson had a sufficient interest in the women's home to challenge the legality of his warrantless arrest, that the arrest was illegal because there were no exigent circumstances to justify the warrantless entry and that his statement was tainted and should have been suppressed.

The United States Supreme Court affirmed, holding "Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." (495 U.S. at pp. 96-97 [109 L.Ed.2d at pp. 92-94].) The court reasoned "[t]o hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. . . . [¶] From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside." (495 U.S. at pp. 98-99 [109 L.Ed.2d at pp. 94-95].)

The court's expansive view of a houseguest's reasonable expectations of privacy in his host's home appears broad enough to confer standing to challenge police activity beyond warrantless arrests.

Nevertheless, the majority suggest appellant's motion to suppress was limited to the legality of the alleged search of his host's home. Based on that view of the record and the Supreme Court's decision in *Rakas* v. *Illinois* (1978) 439 U.S. 128 [58 L.Ed.2d 387, 99 S.Ct. 421], the majority conclude appellant had no interest in the gun he claimed was not his and found in a home in which he was merely a guest. The majority's reliance on *Rakas* v. *Illinois*, *supra*, 439 U.S. 128, however, is misplaced. In that case passengers in a lawfully stopped car who claimed no proprietary or possessory interest in either the car or the contraband had no legitimate expectation of privacy in the glove compartment or area under the seat where the police discovered the items. (439 U.S. at p. 148 [58 L.Ed.2d at p. 404].) In this case by contrast, appellant asserted an interest in his host's home by establishing he was an overnight guest. Consequently, the rationale of *Rakas* is inapplicable in this context.

On the basis of the evidence presented at the hearing, the motion and notice of motion to suppress evidence on the basis of the unlawful arrest, I would hold appellant asserted the illegal arrest as a ground for challenging admission of the evidence seized as a result of the warrantless arrest. Further, based on the evidence establishing appellant's status as an overnight guest and the virtual per se rule of standing for overnight guests announced in *Minnesota* v. *Olson*, *supra*, 495 U.S. 91, I would conclude appellant had standing to challenge the admissibility of the evidence seized during the warrantless arrest in his host's home. Consequently, the trial court erred in not giving appellant a full hearing on the probable cause and other issues involved in that arrest and seizure.

A petition for a rehearing was denied August 10, 1993, and appellant's petition for review by the Supreme Court was denied November 18, 1993. Mosk, J., Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.