[No. F059673. Fifth Dist. Mar. 16, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
FLORENCIO RIOS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

586

**588**

## COUNSEL

Peggy A. Headley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Peter W. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, J.**—Following denial of his suppression motion (Pen. Code,[1] § 1538.5), appellant, Florencio Rios, pleaded no contest to possessing a firearm after being previously convicted of a violent offense (§ 12021.1, subd. (a); count 1) and resisting or obstructing a peace officer (§ 148, subd. (a)(1); count 2). He admitted to having been previously convicted of four serious or violent felonies (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)) and having served four prior prison terms (§ 667.5, subd. (b)). Sentenced to prison for 25 years to life plus three years and ordered to pay various fines and fees, he now appeals, claiming his suppression motion was wrongly denied and that, because section 12021.1 has been replaced by section 12021, the trial court lacked fundamental subject matter jurisdiction and so the judgment is void. For the reasons that follow, we conclude that Rios's Fourth Amendment rights were not violated, and that he cannot raise the statutory claim because he failed to obtain a certificate of probable cause. Accordingly, we affirm.

We publish to address Rios's contention that his suppression motion should have been granted because (1) the prosecution failed to prove the scope and precise terms of the search condition of the juvenile probationer in whose residence Rios was present, and (2) Rios's detention and patsearch breached the limited power and authority conferred on probation officers under California law.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## I.

### Motion to Suppress Evidence

It is settled that a trial court hearing a motion to suppress evidence acts as the finder of fact. Under standard principles of appellate review, we uphold its factual findings, whether express or implied, if they are supported by substantial evidence. (Cf. *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) We then exercise our independent judgment and "measure the facts, as found by the trier, against the constitutional standard of reasonableness" to determine whether the search and seizure were lawful. (*People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

### A. *Factual Background*

Evidence adduced at the hearing on the motion shows that on July 14, 2007, Kern County Deputy Probation Officer Terry Michael Morris was assigned to the High Risk Juvenile Supervision Unit. At approximately 9:30 that morning, he and five other probation officers went to a residence on C Street in Rosamond, where juvenile probationer R.R. resided. Before going to that location, Morris had reviewed R.R.'s juvenile record, and so was aware that the conditions of R.R.'s probation included orders not to associate with gang members, and search terms. In addition, during a home visit by officers on May 11, 2007, R.R. had admitted being under the influence of methamphetamine, and drug paraphernalia and gang tagging had been found in the house.

Upon arriving at R.R.'s home on July 14, one of the officers knocked and announced they were from probation, and someone let them in. Morris was the third officer to enter, whereupon he made contact with Rios, who was sitting on a couch to the right of the front door. When Morris asked who he was, Rios responded that he had just gotten there and was not doing anything. Morris asked Rios's name and address, whether he was on probation or parole, and his purpose for being in the residence; Rios's response to each question was that he was not doing anything. The answer was often accompanied by an expletive directed at Morris. Given the heat of the day, Morris found it unusual that Rios was wearing layers of clothing. In addition, Rios had a tattoo over one eyebrow that read, "One Way In, One Way Out," and a tattoo of three dots on the web of one hand. Based on his training and experience, Morris believed these to be gang related.

As Morris moved to be in front of Rios, Rios turned his body away and leaned forward slightly.[2] Each time Morris took a step further in front of him, Rios leaned forward farther, pushing his right forearm against his waist and turning his shoulder away from Morris. When Morris asked him not to do that and informed him that he was being detained and that Morris was going to check his identification through the sheriff's department, Rios turned his back to Morris and leaned his upper body down on the couch with his right arm pressed against his stomach.

Based on everything he had noticed, including Rios's clothing, evasiveness, and mannerisms, Morris believed Rios was trying to hide a weapon. Morris asked Rios to please stand up and allow Morris to pat him down for Morris's safety. Rios responded, "Fuck you, I am not doing anything, man." Believing Rios had a weapon and concerned for his own safety and that of the other officers, Morris grabbed Rios's left hand and twisted his wrist. He repeatedly ordered Rios to the ground, but Rios kept saying, "Fuck you, I am not doing anything," and attempting to pull away.

Another officer helped Morris take Rios to the ground and handcuff him. Rios was facedown on the floor but kept turning his upper body, making it difficult for Morris to pat him down. Morris stood him up and started patting him down; Rios leaned forward suddenly and a handgun wrapped in a blue bandanna fell out of the front of his shirt area. Morris then discovered a switchblade on Rios.

## B. *Analysis*

■ At the hearing on the suppression motion, the People conceded that there was no arrest or search warrant for Rios at the relevant time, and no evidence was presented that the probation officers possessed any kind of warrant with respect to R.R. or his residence. Because the " 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,' " "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 585–586 [63 L.Ed.2d 639, 100 S.Ct. 1371], fns. omitted.) This principle extends to warrantless entries. (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 181 [111 L.Ed.2d 148, 110 S.Ct. 2793].) Because the officers here lacked a warrant, the People bore the burden of establishing, by a preponderance of the evidence, an exception to the warrant requirement. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878]; *People v. Jordan*

---

[2] Perhaps 20 to 30 seconds elapsed between when Morris entered the house and when Rios hunched over slightly.

(1990) 217 Cal.App.3d 640, 645 [266 Cal.Rptr. 86]; see *Lego v. Twomey* (1972) 404 U.S. 477, 488–489 [30 L.Ed.2d 618, 92 S.Ct. 619].) Consent constitutes such an exception. (*Illinois v. Rodriguez, supra*, 497 U.S. at p. 181.)

The People presented evidence that R.R., who resided at the residence in which the search and seizure took place, was subject to a search condition of probation, which constitutes advance consent. (See *People v. Bravo* (1987) 43 Cal.3d 600, 605 [238 Cal.Rptr. 282, 738 P.2d 336] (*Bravo*).) At the suppression hearing, Rios did not challenge the entry into the residence, but instead limited his challenge to his "detention" after entry. On appeal Rios now argues, however, that because the prosecution failed to prove the precise terms of R.R.'s warrantless search condition, the warrantless entry, and resulting detention and patsearch of Rios, violated the Fourth Amendment.

But Rios cannot now challenge the lawfulness of the entry on appeal because he made no objection to it in the trial court. (See *People v. Scott* (1993) 17 Cal.App.4th 405, 410–411 [21 Cal.Rptr.2d 193].) Accordingly, we assume the officers' entry into R.R.'s residence was lawful, and we examine the extent to which Rios can challenge what took place after the entry.[3]

1.

■ Fourth Amendment rights are personal and may not be vicariously asserted. (*Rakas v. Illinois* (1978) 439 U.S. 128, 133–134 [58 L.Ed.2d 387, 99 S.Ct. 421].) "[A] court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. [Citations.] And the defendant's Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party. [Citations.]" (*United States v. Payner* (1980) 447 U.S. 727, 731 [65 L.Ed.2d 468, 100 S.Ct. 2439].) A defendant bears the burden of establishing a legitimate expectation of privacy in the area searched. (*People v. McPeters* (1992) 2 Cal.4th 1148, 1172 [9 Cal.Rptr.2d 834, 832 P.2d 146], superseded by statute on another point as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106–1107 [77 Cal.Rptr.3d 287, 183 P.3d 1250]; *People v. Madrid* (1992) 7 Cal.App.4th 1888, 1895–1896 [9 Cal.Rptr.2d 798].) Being legitimately on the premises, without more, is insufficient. (*Rakas v. Illinois, supra*, 439 U.S. at pp. 143, 148; *People v. Koury* (1989) 214 Cal.App.3d 676, 686 [262 Cal.Rptr. 870].)

---

[3] We address Rios's ability to take issue with R.R.'s conditions of probation in our discussion of ineffective assistance of counsel, *post*. There was no evidence that the probation officers were targeting Rios when they went to R.R.'s residence, or that they used the fact R.R. was on probation as an excuse to enter in order to arrest Rios. (See *People v. Scott, supra*, 17 Cal.App.4th at p. 411, fn. 6.)

In the present case, we can reasonably infer that Rios was legitimately on the premises, since he was seated inside on a couch when officers entered and there was no evidence that whoever gave admittance to the officers complained about his presence. Beyond this, however, there was no suggestion Rios was anything more than a casual, temporary visitor.[4] Therefore, he had no legitimate expectation of privacy. Accordingly, he failed to establish that his own Fourth Amendment rights were violated by a search of the residence, and so he cannot now challenge that search. (*People v. Rivera* (2007) 41 Cal.4th 304, 308, fn. 1 [59 Cal.Rptr.3d 473, 159 P.3d 60].)

2.

 Rios can, however, challenge the seizure (detention) and search of his person, which led to discovery of the firearm.[5] (*People v. Hannah* (1996) 51 Cal.App.4th 1335, 1340 [59 Cal.Rptr.2d 806] (*Hannah*).) The Fourth Amendment prohibits *unreasonable* seizures. (*People v. Celis* (2004) 33 Cal.4th 667, 673 [16 Cal.Rptr.3d 85, 93 P.3d 1027].) " 'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.' [Citation.] Whether a seizure has taken place is to be determined by an objective test, which asks 'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.' [Citation.] Thus, when police engage in conduct that would 'communicate[] to a reasonable person that he was not at liberty to ignore the police presence and go about his business,' there has been a seizure. [Citations.]" (*Ibid.*)

 Rios does not address precisely when he was detained, instead apparently assuming that a detention occurred upon the probation officers' entry into the residence. The issue is not necessarily clear cut, and the People made no concession on this point at the suppression hearing. There was no evidence Rios was directed to remain seated (cf. *Hannah, supra,* 51 Cal.App.4th at p. 1338) or that any of the officers had their weapons drawn, assuming they were, in fact, armed (cf. *People v. Glaser* (1995) 11 Cal.4th

---

[4] In his written motion to suppress, Rios asserted that he was the brother-in-law of R.R.'s mother. The motion was not evidence, however (*People v. Scott, supra,* 17 Cal.App.4th at p. 408, fn. 2), and status as a family member would not automatically afford Rios a legitimate expectation of privacy in the residence (see *In re Rudy F.* (2004) 117 Cal.App.4th 1124, 1135 [12 Cal.Rptr.3d 483]).

[5] Using the outmoded terminology of "standing" (see *People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3 [96 Cal.Rptr.2d 682, 1 P.3d 3] [directing that mention of "standing" should be avoided when analyzing Fourth Amendment claim]), the People initially claimed in their written response to the suppression motion that Rios could not contest the search and seizure involved in the present case. At the hearing, however, they conceded that he had "standing" with respect to his person and personal effects.

354, 361, 363 [45 Cal.Rptr.2d 425, 902 P.2d 729] (*Glaser*)). Mere questioning does not constitute a seizure. (*Florida v. Bostick* (1991) 501 U.S. 429, 434 [115 L.Ed.2d 389, 111 S.Ct. 2382].) Morris only told Rios that he was being detained when Rios kept turning away from Morris and was starting to lean over. On the other hand, Morris was standing in the doorway through which Rios apparently would have had to exit had he desired to leave. Although Morris seems to have been the only officer in the same room as Rios, a fairly large number of probation officers had entered the residence. In addition, Morris continued to question Rios even though Rios made it clear he did not want to answer. For purposes of our analysis, we will assume that, taking into account all of the circumstances, the officers' conduct would have communicated to a reasonable person, from the time of entry, that he or she was not at liberty to ignore the officers' presence and go about his or her business; hence, a detention occurred. (*Florida v. Bostick, supra*, 501 U.S. at p. 437.)

■ In *Michigan v. Summers* (1981) 452 U.S. 692, 705 [69 L.Ed.2d 340, 101 S.Ct. 2587] (*Summers*), the United States Supreme Court held that a search warrant founded on probable cause carries with it the limited authority to detain the occupants of the premises while the search is conducted. In *Glaser, supra*, 11 Cal.4th 354, the California Supreme Court declined to adopt a blanket approval of detentions in the course of searches pursuant to warrant. (*Id.* at pp. 373–374.) Instead, the court held: "When, in the course of initiating a search under warrant of a private residence for illegal drugs or related items, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention. If the person is determined to be an occupant of the home to be searched, he or she may be detained, pursuant to *Summers*, for the duration of the search. [Citation.] If the person is determined not to be an occupant, further detention is proper only if justified by other specific, articulable facts connecting him or her to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released." (*Id.* at p. 374.)

In *Hannah, supra*, 51 Cal.App.4th 1335, officers went to an apartment to search for a juvenile who was the subject of an outstanding arrest warrant. When they entered, the defendant and another male were seated in the living room. One officer, who remained in the living room while another officer looked for the juvenile, asked the men to remain seated, then questioned them about their identities, relationship to the person who had answered the door, and why they were there. Within a few minutes of entering, the officer saw signs that the defendant was under the influence of drugs and attempted to arrest him. When the defendant tried to flee, a struggle ensued. A search of

the defendant's person turned up drugs. (*Id.* at p. 1339.) After analyzing the pertinent law, especially *Glaser* and *Summers* (*Hannah*, at pp. 1344–1347), we concluded: "The nature of the intrusion upon defendant was minimal. Balanced against this was the governmental interest in obtaining information, preventing a suspect from evading the police, and ensuring the safety of the police officers involved. Considering the totality of the circumstances, the initial detention of defendant was reasonable and legal." (*Id.* at p. 1347.)

In *People v. Matelski* (2000) 82 Cal.App.4th 837 [98 Cal.Rptr.2d 543] (*Matelski*), officers went to a residence to conduct a probation search of a probationer who had failed a drug test. As they arrived, they saw the defendants walking out the front door. One officer ordered the defendants to come over, whereupon the officers explained that a term of the resident's probation prevented him from associating with convicted felons. The defendants were asked for their names and dates of birth; when it was determined that both had outstanding arrest warrants, both were arrested and drugs were found. At the suppression hearing, the defendants argued that they were not engaged in any criminal activity when they were detained, and that the officers had no facts indicating even a suspicion of criminal activity. The People responded that it was reasonable to detain the defendants to determine if they were convicted felons in order to ascertain whether the probationer was in violation of his probation conditions. (*Id.* at pp. 841–842.)[6]

Relying primarily on *Glaser* and *Hannah*, the appellate court balanced the extent of the intrusion against the governmental interests justifying it, and concluded that the detentions were constitutionally reasonable. (*Matelski, supra*, 82 Cal.App.4th at p. 849.) The court noted that the detention was brief—about 15 minutes—and that there was no particular embarrassment or stigma attached to it because it was not viewed by the public. (*Id.* at pp. 849–850.) Although there was no need to determine the defendants' connection to the premises, "there was a need to determine defendants' connection to the probationer because the probationer was prohibited by his general terms of probation from consorting with convicted felons." (*Id.* at p. 850.) Moreover, the court concluded, "[s]ecurity demands that the persons in the home at the time of the officers' arrival remain there until the officers have completed their investigation." (*Ibid.*) The court noted that, although the officers had neither an arrest nor a search warrant, they were not acting randomly, but "were conducting a valid search of the home of a probationer who had failed a drug test. . . . Since the probationer waived his Fourth Amendment rights, the officers were properly able to enter the premises to

---

[6] In its recitation of the facts and arguments related to the suppression motion, the Court of Appeal in *Matelski* occasionally refers to the resident as a parolee, rather than a probationer, and to parole conditions. It is clear from the court's analysis, however, that the resident was on probation.

search it without a warrant." (*Id.* at p. 851.) Once properly on the premises, the officers could briefly detain others present to determine their identity. (*Id.* at p. 852.)

In our view, *Matelski* is factually similar and legally persuasive. Although the probation officers in Rios's case had no arrest or search warrant, they were conducting a valid home visit to a probationer who had violated his probation in the recent past. They had the right to enter and search for him, he was subject to gang and drug conditions, and Rios had what reasonably appeared to be visible gang tattoos on his face and hand. Under the circumstances, they could briefly detain him to ascertain his identity and relationship to the probationer and the probationer's residence.

### 3.

Rios does not contend that *Matelski* was wrongly decided or does not apply. Instead, he argues that he could not be lawfully detained merely because he was a visitor in a juvenile probationer's home, unless the probation officers were lawfully present inside the home due to the juvenile's warrantless search condition. Accordingly, he concludes, the People had to prove the scope and precise terms of R.R.'s probation conditions, and they presented insufficient evidence in this regard. Recognizing that defense counsel did not argue in the trial court that the warrantless entry violated the Fourth Amendment on this basis, Rios says he was denied the effective assistance of counsel because of this failure.[7]

▮ The burden of proving ineffective assistance of counsel is on the defendant. (*People v. Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859].) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.] 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.]" (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519]; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687–694 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

---

[7] Because the issue concerns ineffectiveness of counsel in the course of a motion brought pursuant to section 1538.5, we will address it without requiring a certificate of probable cause (see § 1237.5; *People v. Workman* (1989) 209 Cal.App.3d 687, 692–694 [257 Cal.Rptr. 753]). We express no opinion on whether a certificate of probable cause would be required under the circumstances of another case.

The following testimony was presented on the issue at the suppression hearing:

"Q [by the prosecutor] Prior to going to that location had you reviewed [R.R.]'s juvenile record?

"A [by Deputy Probation Officer Morris] Yes, I had.

"Q Were you aware of the terms of his probation?

"A Yes.

"Q And, to your recollection, what were those terms?

"A [R.R.] was on an early release program and so the Judge imposes every term and condition possible during that short time period, a furlough program similar to being on parole, so you have drug orders, orders not to associate with gang members, stolen property, weapons, spray marking, marking devices.

"Q And—

"THE COURT: Were those search terms, sir? The stolen property—

"THE WITNESS: Yes, as well as drug orders.

"THE COURT: Did the search term include drug orders?

"THE WITNESS: Yes, it did.

"THE COURT: All right."

Rios observes that search conditions come in various forms and scopes. In support of his argument that a "bare reference to a 'search term' " is insufficient, he points to *Bravo, supra*, 43 Cal.3d 600. At page 606 of that opinion, the California Supreme Court stated: "Law enforcement officers who rely on search conditions in probation orders, the probationer himself, and other judges who may be called upon to determine the lawfulness of a search, must be able to determine the scope of the condition by reference to the probation order."

*Bravo* concerned the interpretation of a probation condition, specifically, whether a condition expressly authorizing a search "with or without a warrant" could be construed as permitting a search without reasonable cause

to believe the probationer was currently involved in criminal activity. (*Bravo, supra*, 43 Cal.3d at p. 602.) The court rejected the argument that a preconsent to search carried a "reasonable cause" requirement. It did not deal with the type of sufficiency-of-the-evidence argument that is before us, and we do not read it as requiring the People to prove the scope and precise terms of a probation condition before a warrantless entry pursuant to such a condition can be found lawful. In short, *Bravo* is distinguishable and does not stand for the proposition that the evidence presented in this case with respect to the search condition was insufficient.

■ Rios argues that it was possible the search term did not cover R.R.'s residence. Morris testified, however, that the judge had imposed "every term and condition possible." The trial court implicitly found this testimony to be credible. "[E]very term and condition possible" is inconsistent with a search condition limited to, for example, the probationer's person.

Rios also points out that warrantless search conditions are not always lawful for a juvenile probationer. For example, a minor cannot be made subject to an automatic search condition; instead, such condition must be tailored to fit the circumstances of the case and the minor. (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203 [6 Cal.Rptr.2d 678]; see Welf. & Inst. Code, § 730, subd. (b).) A search condition cannot be made a term of informal supervision under Welfare and Institutions Code section 654 or 654.2. (*Derick B. v. Superior Court* (2009) 180 Cal.App.4th 295, 298 [102 Cal.Rptr.3d 634].)

■ Here, the evidence was uncontradicted that R.R. was on an early release program that was a furlough program similar to being on parole. R.R. clearly was not subject to some form of mere informal supervision. Moreover, even if we were to assume that his search condition was unlawfully imposed on him, we know of no authority that permits one person to challenge the legality of the conditions of another person's probation. " 'The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. . . .' [Citation.]" (*United States v. Padilla* (1993) 508 U.S. 77, 81–82 [123 L.Ed.2d 635, 113 S.Ct. 1936].) This is because "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. [Citation.] And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, [citation], it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. [Citation.]" (*Rakas v. Illinois, supra*, 439 U.S. at p. 134, fn. omitted.)

■ Furthermore, any illegality in the probation condition itself would be attributable to the court that imposed the condition, and not to the probation officers. (See *People v. Miller* (2004) 124 Cal.App.4th 216, 224 [21 Cal.Rptr.3d 13].) "[W]hether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted." (*People v. Sanders* (2003) 31 Cal.4th 318, 334 [2 Cal.Rptr.3d 630, 73 P.3d 496].) As far as the officers in the present case knew, R.R. was subject to numerous terms and conditions, including search. Since R.R. was on an early release program and not some form of minimal supervision, we would not expect a probation officer to question the judgment of the court that imposed a search condition. (See *Illinois v. Krull* (1987) 480 U.S. 340, 349–350 [94 L.Ed.2d 364, 107 S.Ct. 1160].) Under such circumstances, application of the exclusionary rule to suppress evidence would be unwarranted. (See *ibid.* [no application of exclusionary rule where officer acted in objectively reasonable reliance on statute later declared unconstitutional]; *United States v. Leon* (1984) 468 U.S. 897, 920–922 [82 L.Ed.2d 677, 104 S.Ct. 3405] [no application of exclusionary rule where officer acted in objectively reasonable reliance on search warrant later found to be invalid]; *People v. Miller, supra,* 124 Cal.App.4th at pp. 222, 223–225 [evidence seized by law enforcement officers not to be suppressed if officers relied on objectively reasonable justification at time of seizure; facially valid, court-imposed probation condition justifies search even if guilty plea resulting in probation grant vacated subsequent to search]; but see *People v. Willis* (2002) 28 Cal.4th 22, 35, 38–39 [120 Cal.Rptr.2d 105, 46 P.3d 898] [exclusionary rule applies where source of error that led to unconstitutional search was part of law enforcement team].)

Rios's claim that the prosecution failed to prove the scope and precise terms of R.R.'s probationary search term, hence the officers' entry into R.R.'s residence and detention of Rios were unlawful, lacks merit. It follows that trial counsel's failure to argue the issue did not deprive Rios of the effective assistance of counsel. (See *People v. Frye* (1998) 18 Cal.4th 894, 989 [77 Cal.Rptr.2d 25, 959 P.2d 183], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11]; *People v. McPeters, supra,* 2 Cal.4th at p. 1173.)

4.

■ Having concluded Rios was lawfully detained, we proceed to the legality of the search of his person. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer

may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." (*Terry v. Ohio* (1968) 392 U.S. 1, 24 [20 L.Ed.2d 889, 88 S.Ct. 1868].) This is so regardless of whether the officer has probable cause to arrest the individual for a crime. (*Id.* at p. 27.) "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. [Citation.]" (*Ibid.*, fn. omitted.) In short, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. (*Id.* at p. 21.)

In the present case, Morris was dealing with a probable gang member who was overly dressed for the weather, belligerently refused to answer his questions or cooperate with him, and continued to make evasive movements even after Morris asked him to stop. According to Morris's testimony which, as previously noted, was credited by the court hearing the suppression motion, Morris believed, based on all these factors, that Rios was trying to hide a weapon. Concerned for his safety and that of the other probation officers at the residence, Morris asked Rios to stand up and allow Morris to frisk him; it was only after Rios refused that Morris used force.

Under the circumstances, we conclude Morris acted reasonably. He was not required to await an overt act of hostility before acting to neutralize the threat he reasonably perceived. (See *People v. Thurman* (1989) 209 Cal.App.3d 817, 823 [257 Cal.Rptr. 517].) The patsearch was lawful. (See *Terry v. Ohio, supra*, 392 U.S. at p. 27.)

5.

Rios says, however, that the detention and patsearch breached the limited power and authority conferred on probation officers under California law. He says that while peace officers may sometimes detain visitors while conducting a probation search, a juvenile probation officer is granted full peace officer powers only in five statutorily specified circumstances. Since none of those circumstances applied to his situation, the argument runs, the detention and search violated the Fourth Amendment's proscription against unreasonable searches and seizures, and so suppression is required. (See *People v. Horvath* (1982) 127 Cal.App.3d 398, 402–403 [179 Cal.Rptr. 577].)

■ Although probation officers have broad powers with respect to those over whom they exercise supervisory authority (*Cabell v. Chavez-Salido* (1982) 454 U.S. 432, 445–446 [70 L.Ed.2d 677, 102 S.Ct. 735]), it is undisputed that Rios was not on probation at the time of the detention and search. Welfare and Institutions Code section 283 limits probation officers to "the powers and authority conferred by law upon peace officers listed in Section 830.5 of the Penal Code." Section 830.5 designates specified persons as "peace officers whose authority extends to any place in the state while engaged in the performance of the duties of their respective employment and for the purpose of carrying out the primary function of their employment" or as required under enumerated statutes dealing with states of emergency and mutual aid between state agencies and political subdivisions. Under subdivision (a) of section 830.5, probation officers are such peace officers; however, their authority extends only "(1) To conditions of . . . probation by any person in this state on . . . probation. [¶] (2) To the escape of any . . . ward from a state or local institution. [¶] (3) To the transportation of persons on . . . probation. [¶] (4) To violations of any penal provisions of law which are discovered while performing the usual or authorized duties of his or her employment. [¶] (5) To the rendering of mutual aid to any other law enforcement agency."

■ In the present case, although Rios was not on probation, Morris and the other officers were acting within the scope of their authority under section 830.5, subdivision (a)(1) with respect to R.R. This authority included the right to detain Rios (see *Matelski, supra*, 82 Cal.App.4th 837) and, under the situation as it developed, to frisk him for weapons (see *Terry v. Ohio, supra*, 392 U.S. 1). Accordingly, the illegal firearm was discovered while Morris was performing the "authorized duties of his . . . employment." (§ 830.5, subd. (a)(4).) Rios's contrary argument fails. To hold otherwise would mean that juvenile probation officers could not detain or investigate anyone on the same premises as the juvenile probationer, no matter the circumstances or officer safety issues, unless they were accompanied by police or other law enforcement officers. We decline to give section 830.5, subdivision (a) such a limited, unreasonable reading.

## II.

### SECTIONS 12021 AND 12021.1*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 584.

## DISPOSITION

The judgment is affirmed.

Wiseman, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 29, 2011, S192486. Corrigan, J., did not participate therein.