Filed 9/22/25  P. v. Young CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOE YOUNG,<br><br>    Defendant and Appellant. | F087981<br><br>(Super. Ct. No. BF191751A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Tiffany Organ-Bowles, Judge.[†]

Gabriel Silvers, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney, Heather Gimle and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Peña, Acting P. J., DeSantos, J. and Fain, J.[††]

[†]    Judge Michael G. Bush presided over appellant's motion to suppress/motion to quash traverse warrant.  Judge Tiffany Organ-Bowles presided over the jury trial and sentenced appellant.

[††]    Judge of the Fresno Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Appellant Joe Young appeals from the judgment of his conviction by jury for transporting a controlled substance for sale (Health & Saf. Code,[1] § 11352; count 1); misdemeanor possession of a controlled substance (§ 11377, subd. (a); count 4); and misdemeanor possession of controlled substance paraphernalia (§ 11364; count 5). As to count 1, the trial court denied probation and sentenced appellant to the lower term of three years, split between county jail time and mandatory supervision. As to counts 4 and 5, the court sentenced appellant to 180 days in county jail for each offense to run concurrent to the sentence imposed in count 1.

On appeal, appellant contends his pretrial motion to suppress evidence under Penal Code section 1538.5 was erroneously denied.

Finding no error, we affirm the judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

Appellant was charged by information with transportation of a controlled substance, to wit, fentanyl (§ 11352; count 1); possession of a controlled substance for sale, to wit, methamphetamine (§ 11351; count 2); possession of methamphetamine while armed (§ 11370.1, subd. (a); count 3); misdemeanor possession of a controlled substance, to wit, methamphetamine (§ 11377, subd. (a); count 4); and misdemeanor possession of drug paraphernalia (§ 11364; count 5). He pled not guilty to the charges.

Appellant thereafter filed a motion to quash and traverse the search warrant and a motion to suppress evidence related to a search and seizure occurring on January 4, 2022. Evidence to be suppressed included firearms, suspected drugs, scales and baggies, and drug paraphernalia forming the basis of the charges alleged in the information. The People opposed the motions.

---

[1] All further references to code are to the Health and Safety Code unless otherwise indicated.

2.

A hearing was conducted on the motions, at which Kern County Senior Deputy Probation Officer Edgar Rojas and Deputy Probation Officer Jessey Esposito both testified as to the circumstances surrounding the seizure of the evidence.

The evidence adduced at the hearing established that on January 4, 2022, at around 4:13 p.m., probation officers responded to a probationer's residence for a search pursuant to the terms of his probation for narcotics and weapons.

Upon arrival, Rojas observed appellant step out of a vehicle legally parked in the public roadway directly in front of the residence while wearing a backpack. Appellant walked around to the passenger side, opened the passenger door, and reached half of his body inside the vehicle.

While appellant was at the passenger side of the vehicle, Rojas approached appellant. Appellant was no longer wearing the backpack. Rojas asked appellant if he lived at the probationer's address and if he knew the probationer, and appellant said yes to both questions. Rojas also asked if appellant knew if the probationer was home, and appellant said he did not know. Rojas asked permission to conduct a patdown, which appellant allowed, and Rojas found no weapons on appellant's person.

After the patdown, Rojas asked appellant to take a seat in a chair that was in the front yard of the residence, where he would be detained while a protective sweep of the residence was conducted. Probation also gathered the other people present at the residence and congregated them in the living room while the officers searched the probationer's room and the common areas of the residence.

At one point while the probation search was ongoing and appellant remained detained, Rojas observed, through the driver's side window of appellant's vehicle, an extended magazine protruding from between the driver's seat and the center console. The capacity of the magazine appeared to exceed the legal capacity of 10 rounds.

Rojas contacted Esposito, an officer with the K-9 unit, at about 4:20 p.m., as part of the probation search. When Esposito arrived around 5:00 p.m., Rojas had him conduct an open-air sniff with the K-9 of the vehicles parked in front of the residence, including

3.

appellant's vehicle. The dog is trained to alert on several narcotics and alerted to appellant's vehicle. Rojas testified that appellant's detention, at that point, changed from a probation detainment to a "possible new law violation detainment."

Based on the open-air sniff findings, after the probation residence search was conducted, a search was conducted of appellant's vehicle, during which two baggies of fentanyl, a digital scale, and multiple baggies were found in a backpack that was in the backseat of the vehicle. Officers also identified the extended magazine that was seen in plain view.

Following the search of appellant's vehicle, Rojas decided to write a search warrant for appellant's bedroom for any evidence of narcotics sales or firearms. The warrant was written at 7:15 p.m. The warrant was approved at 9:00 p.m., and appellant's bedroom was searched, and other contraband was located.

Rojas testified he initially detained appellant because appellant lived at the residence that was to be searched. He explained third parties related to a probationer's residence are routinely detained during probation searches because they can be involved in or witnesses to a potential new law violation investigation or can potentially be a safety risk to officers if they leave and come back with more people. As to appellant specifically, Rojas believed appellant discarded the backpack he was initially wearing in the vehicle when he saw officers and that it could have potentially been a safety risk if he were allowed to go back to the vehicle.

The defense introduced several clips from a home security camera showing portions of the events of the incident.

After hearing argument from the parties, the trial court denied the suppression motion. As to the initial detention, the court noted that probation could legally approach appellant and ask questions and, after determining he lived in the residence, could legally detain him for the search. The court noted that in relation to the probationer's residence, appellant was "there right in front [of the] house," "literally … five feet away, maybe three to four feet away," concluding "that's close enough that he could be detained" for

4.

the search. The court went on to say that the continued detention was proper for additional investigation because Rojas observed the extended magazine in plain sight. It further held the search of appellant's vehicle was proper under the automobile exception to the warrant requirement, and the search warrant was also properly issued based on the evidence found in the vehicle.

An amended information was subsequently filed alleging numerous circumstances in aggravation in addition to the original charges. Appellant maintained his not guilty pleas and denied all enhancements and priors.

Appellant underwent a jury trial. Prior to starting their case, the People moved to dismiss count 2 and associated allegations, which the trial court granted. Following the People's case, the court granted appellant's motion for entry of judgment of acquittal as to count 3 (Pen. Code, § 1118.1). The jury ultimately returned guilty verdicts as to counts 1, 4, and 5. Appellant waived his right to a jury trial on circumstances in aggravation, and in a bifurcated court trial, the court found appellant knowingly had a weapon available for use within the meaning of California Rules of Court, rule 4.421(a)(2), and found the other alleged circumstances in aggravation not true.

Appellant was sentenced as described above.

## DISCUSSION

Appellant contends his suppression motion was erroneously denied because he was on a public street and not on the "premises" at the time of his initial detention, and there was no probable cause to detain him. He contends that the evidence obtained through the search of his vehicle and his room were "[f]ruit of the poisonous tree." We disagree.

The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, protects the rights against unreasonable searches and seizures, including detentions of one's person. (*People v. Gallegos* (2002) 96 Cal.App.4th 612, 622; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784.)

5.

In reviewing a court's ruling on a motion to suppress evidence alleged to be illegally obtained, we " 'defer to the trial court's factual findings, express or implied, where supported by substantial evidence[, and] [i]n determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

As relevant to the circumstances here, "a warrant to search for contraband … implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." (*Michigan v. Summers* (1981) 452 U.S. 692, 705.)[2] Detention in this circumstance is justified by concerns such as prevention of flight, minimizing risk of harm to the officers, and the orderly completion of the search. (*Id*. at pp. 702–703.) Our Supreme Court has explained:

> "When, in the course of initiating a search under warrant of a private residence …, police officers encounter on the premises a person whose identity and connection to the premises are unknown and cannot immediately be determined without detaining the person, the officers may constitutionally detain him or her for the period of time required and in the manner necessary to make those determinations and to protect the safety of all present during the detention. If the person is determined to be an occupant of the home to be searched, he or she may be detained, pursuant to *Summers*, for the duration of the search. [Citation.] If the person is determined not to be an occupant, further detention is proper only if justified by other specific, articulable facts connecting him or her to the criminal activity suspected to be occurring on the premises or establishing a danger to the officers if the person is released." (*People v. Glaser* (1995) 11 Cal.4th 354, 374.)

*Summers* applies to occupants in "the immediate vicinity of the premises to be searched." (*Bailey vs. United States* (2013) 568 U.S. 186, 199.) To determine whether an occupant is detained within the "immediate vicinity of the premises to be searched," "courts can consider a number of factors … including the lawful limits of the premises,

---

[2]     Courts regularly apply the concepts we discuss herein regarding execution of search warrants to valid probation searches without warrants. (See, e.g., *People v. Rios* (2011) 193 Cal.App.4th 584, 595.)

whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors." (*Id*. at p. 201.)

Applying the above principles, we have no trouble concluding probation's initial detention of appellant was reasonable under *Summers* and its progeny. Though appellant was on a public street/sidewalk when he was initially detained, this is not dispositive as appellant suggests. Under the *Bailey* factors described above, the trial court could properly conclude appellant was well within the immediate vicinity of the area to be searched, as he was standing a few feet away from the front yard of the residence when he was initially approached by probation.[3] He was appropriately subjected to brief questioning regarding his relationship to the residence and the probationer, and once probation ascertained he lived at the residence, officers could properly detain him for the duration of the probation search. Additionally, Rojas's stated reasoning for detention was in line with the reasoning set forth in *Summers*. He articulated appellant was detained based on the general practice of detaining third party occupants of the residence for investigatory and safety reasons and also stated he was concerned appellant may have posed an additional safety risk based on the disposal of his backpack into the vehicle.

Because we conclude the initial detention was proper, we reject appellant's argument that probation's subsequent findings were fruit of the poisonous tree.

Appellant challenges no other aspect of his detention or the search or seizure of his property, so we need not address the remainder of the events of January 4, 2022.

For the above reasons, we conclude the court properly denied appellant's motion to suppress.

## DISPOSITION

The judgment is affirmed.

---

[3] Appellant does not address *Bailey* or make any argument as to whether he was in the "immediate vicinity" of the residence to be searched and has not filed a reply brief.